**F I L E D**
United States Court of Appeals
Tenth Circuit

MAR 13 2002

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS
TENTH CIRCUIT**

---

NATALIA SIZOVA,

       Plaintiff - Appellant,

v.

NATIONAL INSTITUTE OF
STANDARDS & TECHNOLOGY and
REGENTS OF THE UNIVERSITY OF
COLORADO,

       Defendants - Appellees,

No. 00-1494

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 97-D-1964)**

---

Mark E. Rau, The Frickey Law Firm, Lakewood, Colorado (Cecilia M. Serna, P.C., Lakewood, Colorado, on the opening brief), for Plaintiff-Appellant.

David P. Temple, Office of University Counsel, Denver, Colorado, for The Regents of the University of Colorado, Defendant-Appellee.

Nina Y. Wang, Assistant United States Attorney (Richard T. Spriggs, United States Attorney, and Kathleen L. Torres, Asst. U.S. Attorney, with her on the brief), Denver, Colorado, for National Institute of Standards and Technology, Defendant-Appellee.

Before **SEYMOUR**, Circuit Judge, **McKAY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

---

**SEYMOUR**, Circuit Judge.

Natalia Sizova brought this action under 42 U.S.C. §§ 2000e *et seq.* (Title VII) against the National Institute of Standards and Technology (NIST), a federal agency, and the University of Colorado. Ms. Sizova had received a fellowship administered by defendants and alleged that she was the victim of gender and pregnancy discrimination when the fellowship was terminated. The district court granted NIST's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), holding that Ms. Sizova had failed to exhaust her administrative remedies.[1] The court granted the University's motion for summary judgment, concluding as a matter of law that the University was not Ms. Sizova's

---

[1] The district court also granted NIST's motion to dismiss with prejudice on the ground that it was an improperly named defendant. Under 42 U.S.C § 2000e-16(c), a plaintiff in an action against a federal agency is required to name as defendant the head of the agency, in this case the Secretary of Commerce. On appeal, NIST wisely concedes that dismissal with prejudice on this ground was not proper. *See Bayer v. U.S. Dep't of the Treasury*, 956 F.2d 330, 334-35 (D.C. Cir. 1992) (rejecting similar argument and pointing to Fed. R. Civ .P. 15(c), under which pleading amendment that changes party against whom action is brought relates back to date of original pleading).

The court also granted NIST's motion to dismiss Ms. Sizova's estoppel and contract claims, finding that they merely restated her Title VII claims. Ms. Sizova does not appeal this ruling.

employer for purposes of liability under Title VII.  Ms. Sizova appeals.  We affirm in part, reverse in part, and remand for further proceedings.

## I

NIST is a bureau of the United States Department of Commerce whose purpose is to "enhance the competitiveness of American industry while maintaining its traditional function as lead national laboratory for providing the measurements, calibrations, and quality assurance techniques which underpin United States commerce, technological progress, improved product reliability and manufacturing processes, and public safety."  15 U.S.C. § 271(b)(1).  NIST and the University were parties to an agreement establishing the Professional Research Experience Program (PREP), which awarded research fellowships to graduate and postgraduate students at the University.  According to the agreement, the PREP fellows were employees of the University.  NIST provided the funding to the University, which in turn paid the PREP fellows and provided their worker's compensation insurance.  However, Ms. Sizova's work while a PREP fellow was performed at the NIST facility and her work was supervised by NIST employees.

Ms. Sizova is a native of Russia and received her doctoral degree in mechanical engineering from the Academy of Press in Moscow.  She worked as a

guest researcher for NIST in 1995 and was awarded a PREP fellowship in August 1996. Ms. Sizova alleged that she was told her fellowship would last for three years in the form of three one-year contracts. At the time she was awarded the fellowship, she was pregnant with her second child and informed defendants of that fact. Ms. Sizova began working at NIST under her fellowship in September, 1996, gave birth to her child in November, and returned to work two weeks later. On or about December 2, 1996, she was told by Dr. Christopher Fortunko of NIST, one of the scientists with whom she worked, that her fellowship would be terminated at the end of the month due to a lack of funds. Two days later she was allegedly told by the chief of her NIST division, Dr. Harry McHenry, that she was being terminated because he thought she would "not be productive having a baby." App. vol. I at 86. Although Ms. Sizova was only paid by the University for her work at NIST until December 31, 1996, she continued to work on an unpaid basis for a number of weeks thereafter.

Ms. Sizova's efforts to exhaust her administrative remedies are the subject of some dispute between the parties. The regulations governing complaints of employment discrimination against federal agencies require that prior to filing a formal complaint, an aggrieved person must file an informal complaint with the EEO counselor of the employer agency within forty-five days of the alleged act of discrimination or of the effective date of the challenged personnel action. *See* 29

C.F.R. § 1614.105(a)(1) (2001). Ms. Sizova sent a letter to Dr. McHenry dated December 9, 1996, expressing her dismay over their previous conversation and his belief that her productivity would be affected by her motherhood. App. vol. I at 86. The record also contains an affidavit by Ms. Sizova in which she recounted her attempt to file an informal complaint. *Id.* at 89-90. She stated that on an unspecified date after her employment was terminated she contacted Robin Wolf, an EEO specialist with the NIST office, informing her that she wanted to file an informal complaint. Ms. Wolf said she would get back to Ms. Sizova. After Ms. Wolf spoke with her supervisor, she allegedly told Ms. Sizova she could not file an informal EEO complaint with NIST because she was a post-doctoral fellow. At a subsequent evidentiary hearing, although Ms. Wolf denied refusing outright to accept the complaint, she testified she told Ms. Sizova the forty-five day period for filing an informal complaint with NIST had passed and directed Ms. Sizova to pursue her administrative remedies as a University employee against the University. It is undisputed that Ms. Sizova filed virtually identical administrative charges of discrimination with the EEOC against both NIST and the University on May 23, 1997. The charge against NIST was dismissed on June 11, 1997, by the EEOC on the ground that it was without jurisdiction over a claim against a federal agency.

## II

NIST moved for dismissal under Fed. R. Civ. P. 12(b)(1), alleging that Ms. Sizova failed to exhaust her administrative remedies and that the court therefore lacked subject matter jurisdiction over the Title VII claim against NIST. The district court held a hearing on the matter and granted NIST's motion. In so doing, the court found that Ms. Sizova was required to contact an EEO counselor within forty-five days of February 10, 1997, or by March 27, 1997. The court found that Ms. Sizova had been notified of the forty-five day limit by posters prominently displayed in her place of employment at NIST and that she had failed to satisfy any of the grounds provided by the applicable regulation for extending this time limit. On appeal, Ms. Sizova challenges the procedure used by the district court, and the court's conclusion that the posters gave her notice under the circumstances.

We turn first to the procedure employed by the district court. Ms. Sizova makes several challenges to the manner in which the district court dealt with NIST's motion to dismiss. She contends the court erred in failing to properly convert the motion to one for summary judgment for two reasons: the jurisdictional question, if any, was intertwined with the merits of her claim; and the exhaustion issue did not present a question of subject matter jurisdiction. She also maintains the court erred in ruling on the motion without giving notice that

an evidentiary hearing would be held and without allowing discovery on the matter. We address these contentions in order.

When, as here, a party's Rule 12(b)(1) motion challenges the facts upon which subject matter jurisdiction depends, "a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted). Reliance on evidence outside the pleadings in addressing such a motion does not, as a general rule, convert the motion to one for summary judgment under Fed. R. Civ. P. 56. *Id.* We have recognized an exception to this general rule, where "the jurisdictional question is intertwined with the merits of the case." *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987); *see also Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 (10th Cir. 1996). We have stated that subject matter jurisdiction and the merits are considered to be intertwined "[w]hen subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case." *Wheeler*, 825 F.2d at 259; *see also Pringle*, 208 F.3d at 1223.

Ms. Sizova argues that subject matter jurisdiction and the merits are intertwined in this case and that she should have been given the procedural

protections of Rule 56 before the district court converted the motion to one for summary judgment. She bases her argument on the fact that NIST moved for dismissal under Title VII, the same statute under which she asserts her cause of action. "Under *Wheeler*, however, the focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute. Rather, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle*, 208 F.3d at 1223. Here, the jurisdictional issue is whether Ms. Sizova has exhausted her administrative remedies, a matter that is simply not an aspect of her substantive claim of discrimination.[2]

Nonetheless, the fact that NIST's alleged lack of subject matter jurisdiction is not intertwined with the merits of Ms. Sizova's claim does not resolve her alternative argument that the exhaustion issue in this case simply does not present a question of subject matter jurisdiction at all. This is not an uncomplicated matter. We have held that the exhaustion of administrative remedies is a

---

[2] We have held, for example, that substantive claims and jurisdictional issues are intertwined in cases addressing whether a plaintiff was an employee under Title VII, *see Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987), whether the information at issue in a *qui tam* case was publicly disclosed, *see United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 (10th Cir. 1996), and whether the *Feres* doctrine applies in a suit under the Federal Tort Claims Act, *see Pringle v. United States*, 208 F.3d 1220, 1222-23 (10th Cir. 2000).

jurisdictional prerequisite to suit under Title VII. *See, e.g., Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997); *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). However, we were careful to distinguish in *Jones* between a failure to *timely* file an administrative charge, which is not jurisdictional, and a failure to file an administrative charge at all, which is a jurisdictional bar. *See Jones*, 91 F.3d at 1399 n.1 (citing *Zipes v. TWA, Inc.*, 455 U.S. 385 (1982) (timely filing before EEOC not jurisdictionally required to sue in district court)).[3]

As set out above, the regulations governing discrimination complaints against federal agencies require an aggrieved person to consult with an EEO counselor within forty-five days of the alleged discrimination. The regulations also provide that this forty-five day limit is to be extended under certain circumstances.

> The agency or the Commission *shall* extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been[sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, *or for other reasons considered sufficient by the agency or the Commission.*

---

[3] We noted in *Jones v. Runyon* that several circuits have relied on *Zipes* to hold that exhaustion of administrative remedies under Title VII is not jurisdictional at all, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996), but that our circuit holds to the contrary, *id.*

29 C.F.R. § 1614.105(a)(2) (2001) (emphasis added).[4]  The regulation thus provides that if the aggrieved person meets the circumstances set out therein, either the agency or the Commission *must* extend the time limit, and vests both the agency and the Commission with discretion to extend the limit for reasons other than those contained in the regulation itself.  In keeping with our holding in *Jones*, the regulation clearly indicates that compliance with the forty-five day time limit is not a matter of jurisdiction, but rather may be tolled in the appropriate circumstances.

The meager record before us indicates that Ms. Sizova did contact a NIST EEO specialist, albeit not within forty-five days of the alleged discrimination. The outcome of this contact is the subject of a factual dispute.  Ms. Sizova asserted in her affidavit that Ms. Wolf refused to accept her informal complaint because she was a post-doctoral fellow with the University.  Ms. Wolf testified that while she did not refuse to take Ms. Sizova's complaint, she told her the forty-five day limit for doing so had passed and directed her to pursue her claim with the University.  In any event, Ms. Wolf admittedly did not inform Ms Sizova that under section 1614.105(a)(2) either the agency or the Commission could extend the filing time, nor did she accept Ms. Sizova's untimely complaint so that

---

[4] This section has not been revised since 1997, the year in which Ms. Sizova was required to exhaust her administrative remedies.

those entities would have an opportunity to assess whether an extension would be appropriate.[5] In the end, Ms. Sizova's EEOC complaint against NIST was dismissed because the EEOC has no jurisdiction over initial complaints against federal agencies, which must be filed with the agencies themselves.

In the unusual posture of this case, even if we assume for purposes of this appeal that the matter is one of subject matter jurisdiction to which the Rule 12(b)(1) procedures apply, as opposed to a non-jurisdictional issue over whether Ms. Sizova's untimely effort to file a complaint with NIST should have been handled differently, we agree with Ms. Sizova that the district court improperly decided the question without allowing limited discovery.

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco-Vought, Inc.*, 511 F2d. 1033, 1035 (10th Cir. 1975). Although a district court has discretion in the manner by which it resolves an issue of subject matter jurisdiction under Rule 12(b)(1), *see Holt*, 46 F.3d at 1003, a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice

---

[5] We point out that an EEO counselor's refusal to accept a charge because it is untimely precludes the agency and the Commission from ever being in a position to assess whether an aggrieved person is entitled to an extension, thus rendering the protection provided by section 1614.105(a)(2) illusory. Moreover, the counselor is required to inform the aggrieved person of her rights and responsibilities, *see id.* (b)(1), which presumably would include advising her that she could seek an extension of the 45-day filing requirement.

to a litigant, *see First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176-77 (2d Cir. 1998); *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990); *Majd-Pour v. Georgiana Cmty. Hosp., Inc*, 724 F.2d 901, 903 (11th Cir. 1984); *Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 865 (3d Cir. 1977). Prejudice is present where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (quotation and citation omitted).

The district court held a hearing on the motion to dismiss at which the court considered some evidentiary material and asked *sua sponte* for limited testimony from Ms. Sizova and Robin Wolf, the NIST EEO specialist, who was there as a representative of the government. Neither party had requested an evidentiary hearing and the court gave no prior notice that the hearing would be an evidentiary one. Moreover, no discovery had occurred at that point. Ms. Sizova contended at the hearing that NIST had never given her notice of her rights or told her that she was a NIST employee. App. vol. I at 171, 176, 189. She also stated that she repeatedly requested written notice of the termination of her fellowship from both NIST and the University, and did not receive it until May 6, 1997. Ms. Wolf testified that posters explaining the need to contact an EEO counselor within forty-five days of the alleged discrimination were posted at Ms.

Sizova's place of work. Ms. Sizova and Ms. Wolf presented differing versions of the conversations they had when Ms. Sizova attempted to begin the administrative process by filing an untimely informal complaint.

The district court decided the matter by concluding that Ms. Sizova was required to contact a NIST EEO counselor within forty-five days of February 10, 1997, and that under section 1614.105(a)(1) Ms. Sizova was entitled to an extension of this period only if she showed she was not given notice of the time limit and was not otherwise aware of it. The court granted dismissal upon concluding that the NIST posters provided the requisite notice. The posters which the district court held dispositive stated in large block letters: "IF YOU FEEL YOU HAVE BEEN DISCRIMINATED AGAINST *ON THE JOB*, CONTACT A NIST EEO COUNSELOR." App. vol. I at 241 (emphasis added). The poster stated in smaller print: "IF YOU FEEL YOU have been discriminated against because of age, color, disability (physical or mental), national origin, race, religion, sex (including sexual harassment), and/or reprisal; or need additional information regarding discrimination issues, contact an EEO counselor within 45 days of the alleged act of discrimination." *Id.*

For several reasons, we disagree with the district court that these posters resolve the exhaustion issue. While the posters direct a NIST employee to contact an EEO counselor within forty-five days, the posters do not state that the failure

-13-

to do so will result in the loss of a claimant's ability to pursue relief. Moreover, the posters are directed to persons "on the job;" they do not mention holders of fellowships. Ms. Sizova asserts, with some evidentiary support, that she believed herself to be an employee of the University.[6] Accordingly, it cannot be held as a matter of law that posters directed to NIST employees gave Ms. Sizova, a PREP fellow, the requisite notice. *See Johnson v. Runyon*, 47 F.3d 911, 917-919 (7th Cir. 1995) (mere posting of notices not determinative; issue is whether poster reasonably geared to give particular claimant notice of time requirements). "[T]he [45] day statute of limitations is not reasonable if agencies and courts do not liberally construe the [(a)(2)] exceptions." *Id.* at 917 (alterations in original) (citation and quotation omitted); *see also Pauling v. Sec'y of the Dep't of the Interior*, 160 F.3d 133, 137 (2d Cir. 1998).

We are also troubled by the factual dispute regarding the circumstances of Ms. Sizova's untimely attempt to file an informal complaint with Ms. Wolf. Ms. Sizova has raised factual issues concerning whether Ms. Wolf complied with her obligation as an EEO counselor to provide Ms. Sizova with information on her ability to pursue her discrimination claim, particularly given the fact that Ms.

---

[6] As we have mentioned, PREP fellows are declared by the PREP agreement to be University employees and their salary is paid to them by the University. Moreover, Ms. Wolf, the NIST EEO counselor, also believed Ms. Sizova was a University employee because she was a PREP fellow.

Wolf did not accept the complaint, even though untimely, and thereby allow either the agency or the Commission to consider tolling the time limit as provided in section 1614.105(a)(1). In this regard, EEO counselors are required to advise individuals in writing of their rights and responsibilities, *see* 29 C.F.R. § 1614.105(b)(1), and, significantly, must not attempt in any way to restrain an aggrieved party from filing a complaint, *id.* § 1614.105(g).

In addition, in objecting to the lack of discovery, Ms. Sizova's counsel pointed out the relevancy of evidence concerning the way the NIST EEO counselors treated PREP fellows and of any notes Ms. Wolf may have taken of the conversations she had with Ms. Sizova. In light of the factual disputes, further factual development might provide Ms. Sizova with additional grounds for arguing that the forty-five day limit should have been tolled in her case.

In sum, given the contested facts relevant to the exhaustion issue and the need for further factual development of those issues, we are persuaded the question was decided prematurely. Accordingly, we reverse the judgment granting NIST's motion to dismiss and remand for further proceedings in light of this opinion.

## III

The district court granted the University's motion for summary judgment, concluding that Ms. Sizova was employed solely by NIST and rejecting her arguments that she was either a University employee or jointly employed by both NIST and the University. On appeal, Ms. Sizova contends that NIST and the University conduct joint research from which both entities benefit, and that due to this collaborative environment both entities cooperate in controlling the research they perform together. In support of her argument, Ms. Sizova points to evidence that she co-authored an article with both NIST employees and a professor from the University, as well as evidence of other collaborative research efforts between NIST and the University.

"We review the grant of summary judgment de novo, applying the same standard as did the district court." *Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1007 (10th Cir. 2002). Summary judgment is appropriate only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). The movant bears the burden of establishing the lack of disputed material facts, and we view the record and the

reasonable inferences to be drawn from it in the light most favorable to the

nonmoving party. *Id.*

The district court here properly applied the hybrid test in determining

whether the University was Ms. Sizova's employer for purposes of Title VII. *See*

*Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024, 1028 (10th Cir. 1996).

> Under the hybrid test, the main focus of the court's inquiry is the employer's right to control the "means and manner" of the worker's performance. However, the hybrid test also looks at other factors, including: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. No single factor is conclusive. Rather, the courts are to look at the totality of the circumstances surrounding the working relationship between the parties.

*Id.* (quoting *Oestmen v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th

Cir. 1992)). Although the factors in the hybrid test are typically applied to

determine whether the plaintiff is an independent contractor or an employee, *see*

*id.* at 1028 n.1, in this case as in *Lambertsen*, we apply the test "to determine

which of two entities was plaintiff's employer," *id.*; *see also Bristol v. Bd. of*

*County Comm'rs*, __ F.3d ___, No. 00-1053 at 31-32 (10th Cir. filed Feb. 26,

-17-

2002) (applying hybrid test to determination of which of two entities was employer).

We begin by reviewing the evidence relevant to the central focus of the hybrid test: control of the means and manner by which Ms. Sizova conducted her work under the fellowship. Ms. Sizova testified by deposition that her work was supervised by two NIST employees, Dr. Fortunko and Dr. Ledbetter, *see* app. vol. II at 292, and by no one else, *id.* at 293. She stated that those supervisors, along with her NIST coworkers, communicated to her what she should do. *Id.* at 294-95. Dr. Ledbetter stated by affidavit:

> 4. Ms. Sizova was supervised by NIST employees during the fellowship. No one from the University . . . had any role in her supervision while working at NIST laboratories.
> 5. NIST supervisors made all decisions regarding the nature and scope of the job duties to be performed by Ms. Sizova while she worked at NIST during the PREP fellowship. Stated differently, NIST decided what job duties Ms. Sizova would do and how she would perform her job duties.
> 6. NIST employees directed all aspects of Ms. Sizova's day-to-day activities while she worked in the NIST Laboratories during the PREP fellowship.

*Id.* at 288-89.[7]

---

[7] Ms. Sizova contends that notwithstanding the above evidence, a fact issue exists with respect to the control of her work, pointing to evidence that she conferred with and co-authored a paper with Professor Martin Dunn of the University. Although Ms. Sizova stated in her deposition that she had worked with Professor Dunn and wrote a paper with him, she could not remember whether this had occurred during her PREP fellowship or at an earlier date. Professor

(continued...)

In addition to this evidence that NIST controlled and supervised Ms. Sizova's work during her fellowship, other undisputed evidence relevant to the hybrid test demonstrates that NIST selected the PREP fellows from among the candidates recommended by the University, and that NIST alone had the authority to terminate a fellowship. Ms. Sizova argues that these factors are nonetheless not controlling, pointing out that under the PREP agreement the University hired PREP fellows as University employees, and paid their salary and workers' compensation insurance. However, we have held under virtually identical circumstances that such evidence is not dispositive when balanced against the indicia of supervision and control present here. *See Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1153 (10th Cir. 1999).

Ms. Sizova also contends she was at least jointly employed by NIST and the University, pointing out that the award of PREP fellowships was a collaborative

---

[7](...continued)
Dunn stated by affidavit that he had never worked with Ms. Sizova during her PREP fellowship period, and did not supervise, control or direct any of her work during that time. App. vol. II at 443. In addition, as set out above, Dr. Ledbetter also stated by affidavit that no one from the University had any role in supervising Ms. Sizova during her PREP fellowship. Even if a factual dispute were to exist regarding Professor Dunne's supervision during Ms. Sizova's fellowship of the paper they wrote, her work with Professor Dunn would have been at most an isolated incident of little significance in view of the undisputed evidence demonstrating that her work was otherwise completely supervised and controlled by NIST.

effort by both entities and that the research conducted by PREP fellows benefited both.

> Title VII case law recognizes that two separate entities may be a worker's employer if they share or codetermine matters governing the essential terms and conditions of the worker's employment. When a worker is formally employed by one organization, but important aspects of his work are subject to control by another organization, both organizations are employers of the worker. An independent entity with sufficient control over the terms and conditions of the employment of a worker formally employed by another is a joint employer within the scope of Title VII.

*Zinn v. McKune*, 143 F.3d 1353, 1361 (10th Cir. 1998) (Briscoe, J., concurring) (citing *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997); *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1360 (11th Cir. 1994)). Thus two entities may both be a worker's employer if "they share or co-determine those matters governing the essential terms and conditions of employment." *Virgo*, 30 F.3d at 1360 (quotation and citation omitted). In this case, the undisputed evidence indicates that NIST alone selected those applicants to be awarded PREP fellows, only NIST had the authority to terminate a PREP fellowship, and only NIST supervised and controlled Ms. Sizova's work. Contrary to Ms. Sizova's argument, the fact that the fellowship program was a collaborative effort benefiting both NIST and the University does not mandate the inference that both entities therefore controlled her work given the undisputed evidence the NIST had sole control over the essential terms and conditions of her employment. In sum, we agree with the

district court that the University was not Ms. Sizova's employer for purposes of Title VII liability, and the district court therefore properly granted summary judgment for the University.

The judgment of the district court is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings in light of this opinion.