**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 5, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DIANE XIE, an individual,

      Plaintiff-Appellant/
Cross-Appellee,

v.

UNIVERSITY OF UTAH, a higher
education institution and political
subdivision of the State of Utah,

      Defendant-Appellee/
Cross-Appellant.

Nos. 06-4087 & 06-4098

(D. Utah)

(D.C. No. 2:04-CV-864-TC)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY, HENRY**, and **LUCERO**, Circuit Judges.[**]

---

Diane Xie, Ph.D., served as a research associate professor in the

Department of Civil and Environmental Engineering at the University of Utah

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. The case is therefore ordered submitted without oral argument. See FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G).

from September 2000 to July 2003. When the University decided not to renew her contract, Dr. Xie filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, alleging that the University had discriminated against her on the basis of her national origin and gender and had retaliated against her for complaining about that discrimination.

The district court granted the University's motion to dismiss for lack of subject matter jurisdiction, reasoning that Dr. Xie was not the University's employee. Dr. Xie now challenges that decision. Invoking the Supreme Court's decision in Arbaugh v. Y & H Corp., 126 S. Ct. 1235 (2006), decided on the same day that the district court dismissed her claims, she argues that, contrary to the district court's view, employee status is not a threshold jurisdictional requirement under Title VII but rather a question of fact for the jury. Additionally, Dr. Xie contends that the district court erred in refusing to allow her to take the deposition of Professor Lawrence Reaveley, the chair of the Department of Civil and Environmental Engineering.

The University cross-appeals. Although it agrees that, in light of Arbaugh, employee status is not a threshold jurisdictional requirement under Title VII, the University maintains that Dr. Xie was not its employee and that, as a result, this court should direct the entry of judgment on the merits in its favor.

We agree that employee status is an element of Dr. Xie's Title VII claims rather than a threshold jurisdictional requirement. We further conclude that Dr.

Xie was not a University employee and that the district court did not abuse its discretion in refusing to allow Dr. Xie to depose Professor Reaveley. Accordingly, we remand the case to the district court with instructions to enter an amended judgment in favor of the University on the merits of Dr. Xie's Title VII claims.

## I. BACKGROUND

In March of 2000, Dr. Xie contacted Professor Lawrence D. Reaveley, the chairman of the University of Utah's Department of Civil and Environmental Engineering. She told him that she would like to apply for a faculty position. Professor Reaveley asked for Dr. Xie's resumé, and, upon reviewing it, he found a position for her in the Energy and Geoscience Institute, which was affiliated with the University of Utah.

Dr. Xie began working at Energy and Geoscience Institute in July 2000. Within a few weeks, she contacted Professor Reaveley again and asked about a position with the Civil and Environmental Engineering Department. Although there were no teaching positions available, Professor Reaveley and Dr. Xie discussed the possibility of her associating with the Department so that she could pursue her research interests.

In September 2000, Dr. Xie received a one-year appointment as a "Research Associate Professor." The Department renewed this appointment in June 2001 and June 2002, but it declined to do so in June 2003.

A section of the University's policy manual uses the word "employ" when discussing "auxiliary faculty" such as "research, clinical, lecturer (or lecturing), adjunct, or visiting faculty members." Aplt's App. vol. III, at 473. The University provided Dr. Xie with a shared office, a shared telephone, access to a copier, some business cards, and a mailbox. As a research associate professor, Dr. Xie was subject to some of the University's policies regarding scientific research. In particular, in order to ensure that her grant proposals complied with University standards, University officials reviewed her proposals before she submitted them to outside entities. The University also retained an ownership interest in any work product that she produced.

However, the University did not pay Dr. Xie a salary or provide her with insurance, vacation time, retirement, or other benefits. According to Dr. Xie, the University agreed that she could keep a portion of the grant money that she received. However, it is undisputed that Dr. Xie never received any grant money during the time she was associated with the University. Additionally, the University did not pay social security or other taxes on her behalf. It did not require her to work a certain number of hours and did not monitor her day-to-day work activities. Dr. Xie did not teach any courses, advise students, or perform administrative tasks for the University. She supplied her own computer and all additional supplies.

After the University declined to renew her appointment, Dr. Xie filed this Title VII action, alleging that the decision was based on her national origin and gender and was taken in retaliation for her complaints about that discrimination. Shortly after filing the complaint, she sought to take Professor Reaveley's deposition. However, the University objected on the grounds that Dr. Xie had not complied with her own disclosure obligations under the Federal Rules of Civil Procedure.

Subsequently, the University filed a motion to dismiss, arguing that the district court lacked subject matter jurisdiction over the Title VII claims because Dr. Xie was not its employee. Dr. Xie then moved the court to order Professor Reaveley's deposition. A magistrate judge granted the motion, but the University appealed that ruling to the district court, arguing that the court should stay discovery until it ruled on the motion to dismiss. At a motions hearing, the district court granted that request.

In a February 2006 Order and Memorandum Decision, the district court granted the University's motion to dismiss. The court applied a multi-factor test to determine whether Dr. Xie was the University's employee. See Aplt's App. vol. II, at 299-300 (Dist. Ct. Memorandum Decision) (citing Lambertsen v. Utah Dep't of Corrs., 79 F.3d 1024, 1028 (10th Cir. 1996)). Under that test, the main focus is whether the alleged employer controls the means and manner of the worker's performance. Lambertsen, 79 F.3d at 1028.

Here, the court acknowledged, some factors weighed in favor of considering Dr. Xie an employee. However, the court concluded, the University had "minimal ability . . . to control the means and manner of [Dr.] Xie's work," and "the affidavits submitted by both parties indicate that the University and [Dr.] Xie intended to enter into a loose association rather than a formal employer-employee relationship." Aplt's App. vol. II, at 302-03. Thus, Dr. Xie was not the University's employee, and the court lacked jurisdiction over her Title VII claims.

Dr. Xie filed two post-judgment motions. She contended that, in light of Arbaugh v. Y & H Corp., 126 S. Ct. 1235 (2006), the district court had erred in characterizing employee status as a threshold jurisdictional requirement under Title VII. The district court denied both motions.

## II. DISCUSSION

Dr. Xie challenges the district court's ruling that she was not the University's employee and its decision not to allow her to depose Professor Reaveley. The University responds that although the district court did err in holding that it lacked subject matter jurisdiction, this court should direct the entry of judgment in its favor on the merits of Dr. Xie's Title VII claims because the undisputed facts establish that she was not the University's employee.

Both Dr. Xie's challenge to the district court's dismissal of her complaint and the University's argument for affirmance on alternative grounds raise legal

-6-

issues that we examine de novo. See Georgacarakos v. United States, 420 F.3d 1185, 1186 (10th Cir. 2005) (reviewing de novo the grant of a motion to dismiss for lack of subject matter jurisdiction); Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006) (stating that whether summary judgment is warranted is also a legal question). We review for an abuse of discretion the district court's decision not to allow Dr. Xie to depose Professor Reaveley. Shaklee Corp. v. Gunnell, 748 F.2d 548, 550 (10th Cir. 1984). A trial court abuses its discretion when it issues a ruling that is "arbitrary, capricious, whimsical, or manifestly unreasonable." Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999).

A. Employee Status is not a Threshold Jurisdictional Issue

Title VII prohibits unlawful employment practices by "an employer." 42 U.S.C. § 2000e-2(a). The statute defines "an employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). An "employee" is "an individual employed by an employer." 42 U.S.C. § 2000e(f).

Here, there is no dispute that the University is an "employer" under Title VII: it is engaged in an industry affecting commerce and has more than fifteen employees. However, the parties do dispute whether Dr. Xie herself was employed by the University.

Since Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987), this circuit has treated the definitions at § 2000e as both substantive and jurisdictional.

-7-

However, in light of the Supreme Court's decision in Arbaugh, we now conclude that employee status is an element of Dr. Xie's Title VII claims rather than a matter of subject matter jurisdiction.

In Arbaugh, the Court considered the provision of Title VII that states that the statute's protections only apply to those employers that have fifteen or more employees. 42 U.S.C. § 2000e(b). The Court held that the requirement was "an element of the plaintiff's claim for relief, not a jurisdictional issue" because it appeared "in a separate provision that does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." 126 S. Ct. at 1245 (internal quotation marks omitted).

Like the fifteen-or-more-employees requirement, the Title VII provision that extends the statutory protections to employees but not independent contractors is set forth in the definitional section of the statute. See 42 U.S.C. § 2000e(f). As with the fifteen-or-more employees requirement addressed in Arbaugh, there is no indication that Congress considered employee status to be a threshold jurisdictional requirement. We therefore conclude that Dr. Xie was not required to prove as a threshold jurisdictional requirement that she was an employee of the University. Instead, her alleged employee status is an element of her Title VII claims.

Here, the district court may well have concluded from our decision in Wheeler that it was not necessary to determine whether employee status was a

question of subject matter jurisdiction or an element of Dr. Xie's Title VII claims. In any event, because the district court's order expressly states that the claims were dismissed for lack of subject matter jurisdiction, we must now consider whether in light of Arbaugh we must reverse and remand its decision for discovery, a round of summary judgment motions, and perhaps a trial.

In Arbaugh, the Court explained the potential consequences of characterizing an issue as one of subject matter jurisdiction. First, because subject matter jurisdiction involves the court's power to hear a case, it can never be forfeited or waived. Thus, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. Second, in some instances, if subject matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own; in contrast, if satisfaction of an essential element of a claim for relief is at issue, the jury is the proper trier of contested facts. Third, when a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety; in contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims. Arbaugh, 126 S. Ct. at 1244-45.

Here, the first potential consequence is not in play. Unlike the defendant in Arbaugh, who did not raise the issue of the number of employees on its payroll

-9-

until two weeks after the entry of judgment on a jury verdict, the University here raised the question of Dr. Xie's status in a pretrial motion to dismiss. Therefore, there is no concern that, by incorrectly characterizing the employee-status issue as jurisdictional, the district court permitted a party to raise a defense that would have otherwise been waived because it was not asserted in a timely fashion.

The third potential consequence of incorrectly characterizing the employee issue as jurisdictional is also not present here. Dr. Xie did not assert any pendent state claims in her complaint. Thus, we need not concern ourselves with the effect of district court's characterization of the issue as jurisdictional on such other claims.

However, the second potential consequence noted in Arbaugh requires closer examination. The district court reviewed the parties' evidentiary submissions and concluded that Dr. Xie was not an employee. Because the employee-status issue involved the merits of Dr. Xie's Title VII claims, the court was not allowed to resolve contested facts. See id. at 1244. We therefore turn to the question of whether the uncontested facts establish that Dr. Xie was not an employee of the University.

## B. Alleged Employee Status

Dr. Xie argues that a reasonable juror could have concluded that she was an employee of the University. In support of that argument, she points to the University's statements in its policy manual that "auxiliary faculty," like research

associate professors, are "employ[ed]" by the University. Aplt's App. vol. III, at 473. Additionally, she alleges that "it was the parties' intent to pay her $80,000 annually from grant moneys." Aplt's Br. at 20. Finally, she argues that the district court's observations about the University's lack of control over her work are irrelevant because all professors, in light of academic freedom principles, work independently.

As the district court observed, in determining whether a party is an employee protected by Title VII, we apply a multi-factor test under which the main focus is whether the alleged employer controlled "the means and manner by which the work is accomplished." Lambertsen, 79 F.3d at 1028. The court may consider many other factors, including: (1) the kind of occupation at issue, with reference to whether the work is done at the direction of a supervisor or by a specialist without supervision; (2) the skill required; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. Id.

Upon consideration of these factors, we agree with the district court that the undisputed facts establish that Dr. Xie was not the University's employee. Most importantly, the University exercised very little, if any, control over her daily activities. During her time as a research associate professor, Dr. Xie could pursue whatever research activities she chose. She had no teaching, advising, or administrative obligations to the University, and she received no regular supervision in the conduct of her research. That degree of independence undermines her contention that she was an employee. See Wilde v. County of Kandiyohi,15 F.3d 103, 106 (8th Cir. 1994) (concluding that the plaintiff business owner was not an employee because she "maintained a great deal of freedom in choosing her working hours and choosing the services she would provide") (internal quotation marks omitted); Pisharodi v. Valley Baptist Med. Ctr., 393 F. Supp. 2d 561, 571 (S.D. Tex. 2005) (concluding that the plaintiff physician was not an employee of defendant hospital under Title VII and reasoning that "[a]lthough [the plaintiff's] staff privileges could be revoked by [the hospital] (effectively 'firing' him), [the hospital] had no right to supervise him and could not control his work schedule" and that the plaintiff "was free to work if and when he so desired and to work in the manner of his choosing"); Tadros v. Coleman, 717 F. Supp. 996, 998, 1005 (S.D.N.Y. 1989) (concluding that the plaintiff, appointed a "Visiting Lecturer in Ophthalmology," was not an employee of a medical school because "[none] of the of the Medical College's faculty assign[ed] [the plaintiff]

any work or attempt[ed] to exercise any control over what [the plaintiff] tried to do"), aff'd, 898 F.2d 10 (2d Cir. 1990).

Moreover, we agree with the district court that additional facts weigh against Dr. Xie's contention that she was an employee. The University never paid her a salary, never provided her with employment-related benefits, and never paid social security or other taxes on her behalf. Moreover, the supplies provided by the University were minimal (a shared office, a shared telephone, business cards, and the use of an office copy machine). See York v. Ass'n of the Bar of the City of N. Y., 286 F.3d 122, 126 (2d Cir. 2002) (concluding that a member of a bar association's international law committee was not an employee despite the fact that the association had provided her with workspace, clerical support, publicity, and reimbursement for out-of-pocket expenses). Additionally, as we discuss below, the facts noted by Dr. Xie in her appellate brief do not constitute colorable evidence of employee status.

First, the faculty regulations that she invokes only briefly use the term "employ" in addressing the role of "auxiliary faculty." They state that "[i]n light of the University's need to retain the flexibility to adjust its programs to meet changing needs and to employ faculty with more specialized foci to that end, auxiliary faculty may be appointed as research, clinical, lecturer (or lecturing), adjunct or visiting faculty members as further defined in the sections below." Aplt's App. vol. III, at 473 (emphasis added). The regulations then describe in

general terms the roles of various categories of "auxiliary faculty," including "research faculty" like Dr. Xie:

> Research Faculty . . . [,] individuals who participate in the university's academic program . . . but whose primary professional efforts are devoted to one or more research projects, or nonacademic training projects[,] may be appointed to the rank of professor, associate professor, assistant professor, or instructor. . . . Appointments to "research" positions are without significance for the achieving or holding of tenure.

Id. at 474.

These regulations do not purport to describe in detail the responsibilities of particular associate research faculty. They allow individual colleges and departments to define the responsibilities of auxiliary faculty with more particularity and thus add little to the inquiry.

Second, Dr. Xie's allegation that the University agreed to pay her an $80,000 salary out of grant money is belied by the record. In support of that contention, Dr. Xie relies on a Personnel Action Notification Form, dated August 1, 2000, that lists a salary of that amount. Aplt's App. vol. I, at 183. However, the University has submitted an affidavit from a payroll officer explaining that the document at issue relates to Dr. Xie's position with the Energy and Geoscience Institute, a position that Dr. Xie briefly held before she was appointed a research associate professor. See Aplt's App. vol. I, at 185-87 (affidavit of Janice Sherwood).

-14-

Finally, contrary to her contention, principles of academic freedom do not help Dr. Xie's case. It is true that the University affords its faculty substantial independence in intellectual pursuits. However, the record establishes that the relationship between the University and Dr. Xie was far more attenuated than that of an educational institution and its faculty employees. As we have noted, Dr. Xie had no teaching or administrative obligations and received no regular supervision or evaluation. Aside from the requirement that she submit her grant proposals to a University committee and the fact that she was subject to the University's rules on research misconduct, the University had little, if any, control over her day-to-day activities. We therefore agree with the district court that "[t]oo many critical components of a traditional employment relationship are absent here." Aplt's App. vol. II, at 303.

### C. Professor Reaveley's Deposition

Finally, Dr. Xie contends that the district court abused its discretion in refusing to allow her to take the deposition of Professor Reaveley, the chairman of the University's Department of Civil and Environmental Engineering, before ruling on the University's motion to dismiss. Dr. Xie maintains that she requested that the court allow discovery pursuant to Fed. R. Civ. P. 56(f) but that the court denied the request, therefore depriving her of "adequate discovery" before dismissing her complaint. Aplt's Br. at 28. Dr. Xie also argues that the court erred in deciding the issue without allowing oral argument.

-15-

In considering these contentions, we first note the procedural context in which the court dismissed Dr. Xie's complaint.  The University had filed a motion to dismiss, alleging a lack of subject matter jurisdiction.  Prior to the Supreme Court's decision in Arbaugh (discussed above), the parties reasonably believed that the question of Dr. Xie's employee status raised a threshold issue of subject matter jurisdiction.  See Arbaugh, 126 S. Ct. at 1242 (noting "conflicting opinions in Courts of Appeals on the question whether Title VII's employee-numerosity requirement, 42 U.S.C. § 2000e(b), is jurisdictional or simply an element of a plaintiff's claim for relief"); Wheeler, 825 F.2d at 259 (stating that "the determination of whether [the plaintiff] qualifies as an employee under the federal discrimination statutes is both a jurisdictional question and an aspect of the substantive claim in her discrimination action").  Thus, because the University did not file a summary judgment motion, Fed. R. Civ. P. 56(f), which allows the party responding to a summary judgment motion to request further discovery, was not directly applicable.  See Price ex rel. Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000) (noting that the central tenet of Rule 56(f) is that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986) (alteration in Price)).

Moreover, contrary to her contention in her appellate brief, Dr. Xie never filed a Rule 56(f) affidavit requesting additional discovery before responding to the merits of her motion. Instead she merely filed a motion for leave to file a Rule 56(f) motion. See Aplt's App. vol. II, at 217-220.

Nevertheless, requests for additional discovery to respond to motions to dismiss alleging a lack of subject matter jurisdiction (like the University's motion here) are governed by principles resembling those established in summary judgment practice under Fed. R. Civ. P. 56. In particular, we have held that "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." Sizova v. Nat'l Inst. of Standards & Tech. 282 F.3d 1320, 1326 (10th Cir. 2002) (internal quotation marks omitted). Additionally, although a district court has discretion in the manner by which it resolves an issue of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), a refusal to grant discovery may constitute an abuse of discretion if the denial results in prejudice to the party responding to the motion. Id. Prejudice is present where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." Id. (quoting Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977) (internal quotation marks and citations omitted)).

Here, Dr. Xie has failed to establish that her lack of opportunity to depose Professor Reaveley prejudiced her with regard to the district court's ruling that she was not an employee of the University. In neither her appellate brief nor in the district court papers to which she now refers, see Aplt's Br. at 27, does Dr. Xie contend that she needed to obtain information from Professor Reaveley in order to adequately respond to the University's motion to dismiss. Moreover, as the University notes, Dr. Xie presented her own affidavit in response to the University's motion. If there were additional facts not noted by the University that indicated that the University controlled "the means and manner by which the work is accomplished," and thus supported her theory that she was an employee of the University, Dr. Xie herself would seem to be in as good a position as Professor Reaveley to testify about those facts. Lambertsen, 79 F.3d at 1029. Dr. Xie has also failed to establish that she was prejudiced by the district court's decision not to allow oral arguments on this issue. See In re Young, 91 F.3d 1367, 1377 (10th Cir. 1996) (rejecting a challenge to the denial of oral argument absent a showing of prejudice).

### III. CONCLUSION

We therefore conclude that Dr. Xie was not employed by the University and that, as a result, the University is entitled to judgment in its favor on Dr. Xie's Title VII claims. Accordingly, we VACATE the district court's judgment dismissing Dr. Xie's claims for lack of subject matter jurisdiction and REMAND

-18-

the case for the entry of judgment in favor of the University on the merits of Dr.

Xie's Title VII claims.


        Entered for the Court,



        Robert H. Henry
        United States Circuit Judge