**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 3 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

PAMELA R. GOODWIN,

      Plaintiff-Appellant,

v.

GENERAL MOTORS
CORPORATION,

      Defendant-Appellee.

No. 01-3019

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. CV-99-2241-CM)

---

Donald R. Aubry of Jolley, Walsh, Hurley & Raisher, P.C., Kansas City,
Missouri, for Plaintiff-Appellant.

Robert J. Harrop (David C. Vogel with him on the brief), of Lathrop & Gage
L.C., Kansas City, Missouri, for Defendant-Appellee.

---

Before **EBEL** and **PORFILIO**, Circuit Judges, and **SHADUR**, District Judge.[*]

---

**SHADUR**, District Judge.

---

     [*]     The Honorable Milton I. Shadur, Senior United States District Judge
for the Northern District of Illinois, sitting by designation.

Pamela Goodwin ("Goodwin") has sued her employer General Motors Corporation ("General Motors"), charging it with racial discrimination actionable under Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. §§2000e to 2000e-17). Goodwin, who is African-American, alleges that General Motors has discriminated against her over the years by paying her a significantly lower salary than similarly-situated white employees.

After reviewing the parties' submissions on General Motors' motion for summary judgment under Fed. R. Civ. P. ("Rule") 56, the district court granted that motion on the grounds (1) that the majority of Goodwin's claims for pay discrimination were time-barred because her pay rates had been established more than 300 days before she filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and (2) that Goodwin had failed to present a prima facie case for discrimination related to the single claim that was not time-barred.[1] We reverse the district court's grant of summary judgment in General Motors' favor and remand the action for trial.

## Standard of Review

We review the grant of summary judgment de novo, applying the same

---

[1]    Goodwin's initial complaint had also asserted claims under 42 U.S.C. §1981. Because she failed to address those claims in response to General Motors' Rule 56 motion, the district court deemed them abandoned in the course of granting summary judgment to General Motors. That abandonment ruling has not been appealed.

standard as did the district court (<u>Brown v. Gray</u>, 227 F.3d 1278, 1285 (10th Cir. 2000)). Under Rule 56(c) summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Familiar Rule 56 principles impose on General Motors as movant the initial burden of establishing the lack of a genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). On appellate review we, like the district court, are required to draw all reasonable inferences in the light most favorable to nonmovant Goodwin (<u>Brown</u>, 227 F.3d at 1285).

Facts

Goodwin began working for General Motors in 1976 in a pre-foreman training program at its Leeds plant in Kansas City, Missouri. During the next decade she held a number of different positions there, including supervisor over janitorial services, supervisor over sanitation and senior clerk. Goodwin was also laid off several times as a result of reductions in force. Following each layoff she was recalled, although she experienced some salary reductions as a result of the layoff periods.

In August 1987 General Motors closed the Leeds plant and again placed Goodwin on layoff status. In October 1987 General Motors rehired her to work as

a temporary security guard at its Fairfax plant in Kansas City, Kansas. Several months later Goodwin accepted a position as clerk in the labor relations department of that plant.When she had interviewed for that position she was informed that it was a permanent fifth-level position,[2] but upon being hired she was placed in a temporary fourth-level position. Her salary was even lower than what she had received as a fourth-level clerk at the Leeds plant, and she was told that this was because Fairfax plant workers were paid less than those at the Leeds plant. After Goodwin had applied to transfer to another General Motors plant, her position was made permanent, and her salary was later adjusted to reflect a fifth-level rate of pay. In late 1991 Goodwin was promoted to the sixth-level position of labor relations representative ("representative"), a position that she continues to hold today.[3]

While employed by General Motors, Goodwin obtained a bachelor's degree in 1986 and a master's degree in personnel and labor relations in 1989. At the time of Goodwin's promotion to representative, all three of the other representatives were white, and only one had a master's degree. Each of the four

---

[2]    General Motors uses job levels to designate the salary ranges available to employees in particular positions.

[3]    For a period of time from April 1992 until December 1993, Goodwin--along with another one of the representatives--was returned to a fifth-level clerk position, without any decrease in salary, due to a reduction in force at the Fairfax plant.

representatives had been a salaried employee of General Motors since the 1970s and had held a variety of positions, including other supervisory positions, before becoming a representative. Goodwin's supervisor Charles Limon testified that all four of the representatives had different strengths and weaknesses and that none of them stood "head and shoulders" above the rest.

When she was promoted to representative, Goodwin's salary was set at more than $300 per month lower than the lowest paid of the other representatives and more than $500 less than the highest paid. Over the years that salary disparity grew larger (principally due to straight percentage increases), until in 1997 Goodwin was being paid $547 less per month than the next lowest paid representative. During the same period of time the disparity among the rates of pay of the other three representatives shrank from over $200 per month to only $82 per month.

Pay ranges for salaried employees in General Motors plants are established by company headquarters in Detroit. Aside from those market ranges, there are no set rates for employees entering specific positions. Salaries are not dictated by an employee's seniority with the company or in a particular position, and subjective factors can come into play as managers and personnel officers determine the levels of compensation for salaried employees.

General Motors also maintains a confidentiality policy regarding salaried

employees' earnings, so that Goodwin did not know about--and had no way of discovering--the salary disparity between herself and the other representatives. In about April 1996 Goodwin did express concerns about her compensation level to the personnel director after hearing a rumor that a white clerk in a fifth-level position was earning more than she was. Goodwin was assured that her salary was higher than the clerk's. When she asked if her raises could be increased to bring her salary closer to what she believed to be the market range for her position, she was told that no funds were available for such an adjustment.

In March 1998 a printout listing the 1997 salaries of each of the four representatives somehow appeared on Goodwin's desk and on the desks of some co-workers.[4] Goodwin immediately sought an explanation from management as to the disparity the printout revealed. In June 1998 General Motors offered Goodwin an annual raise of 5%--but because she refused to sign a contemporaneous document acknowledging that she had received all of the compensation due her, she never received that increase. Two months later Goodwin was offered an additional raise that would have kept her salary $259 less than the next lowest paid representative, and she declined that as well. Nor did Goodwin receive a 1999 annual raise, also due to her continuing refusal to

---

[4]     Neither party has provided an explanation of how that printout came to be placed on Goodwin's desk or by whom, but there is no dispute as to the accuracy of the information it contained.

-6-

sign the acknowledgment.

On September 22, 1998 Goodwin filed a charge of employment discrimination with EEOC. After she received a right to sue letter, she timely filed suit in the District of Kansas. Upon completion of discovery General Motors filed its motion for summary judgment. As stated earlier, this is the appeal from the granting of that motion and the consequent dismissal of the case.

## Statute of Limitations

Under Title VII a plaintiff must file an administrative charge with EEOC within 300 days after the alleged act of discrimination (Martin v. Nannie & the Newborns, Inc., 3 F.3d 1410, 1414 (10th Cir. 1993)). Here the district court ruled that with the exception of the raise Goodwin was offered in 1998, any claims related to her pay rate were barred as having occurred more than 300 days before she filed her EEOC charge. In so ruling the district court framed Goodwin's pay discrimination claim as a continuing effect of prior discrimination. That analysis was clearly in error.

Continuing effects of prior discrimination are generally not actionable under Title VII once the 300 day filing period has passed following the underlying discriminatory acts. United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977) held that an otherwise neutral system that merely perpetuates the effects of previous discrimination is not itself actionable under Title VII. In

effect <u>Evans</u> precludes any plaintiff from recovering for any lingering effects of discrimination once the Title VII filing period has elapsed after the underlying discriminatory acts (see also <u>Delaware State Coll. v. Ricks</u>, 449 U.S. 250, 258 (1980); <u>Lorance v. AT&T Techs., Inc.</u>, 490 U.S. 900, 908 (1989)).

But <u>Bazemore v. Friday</u>, 478 U.S. 385, 395 (1986) has taught a crucial distinction with respect to discriminatory disparities in pay, establishing that a discriminatory salary is not merely a lingering effect of past discrimination--instead it is itself a continually recurring violation.[5] <u>Bazemore</u> addressed the question whether discriminatory pay rates that had been set before Title VII became applicable to state and local governments were actionable or nonactionable under Title VII as then amended to expand its coverage (<u>id</u>.). In answering that question in the affirmative, <u>Bazemore</u> articulated what remains the basic rule as to pay discrimination claims (<u>id</u>.):

> Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII.

---

[5]     <u>Bazemore</u> begins with a brief two-page per curiam opinion (<u>id</u>. at 386-88). What then follows is an extended concurring-in-part opinion authored by Justice Brennan and joined by <u>all</u> of the other Justices (<u>id</u>. at 388-407). Two other opinions conclude the array: a separate concurrence by Justice White, written for himself and four other Justices (<u>id</u>. at 407-09), and a dissenting-in-part opinion by Justice Brennan, written for himself and three other Justices (<u>id</u>. at 409-20). Because what is treated in this opinion is drawn entirely from the first-mentioned Brennan opinion, it represents a unanimous decision of the Supreme Court.

Under <u>Bazemore</u>, then, pay discrimination must be viewed as a continually recurring series of violations, each of which is separately actionable under Title VII.

While this circuit has had no previous occasion to consider and apply that rule, other circuits have uniformly recognized that under <u>Bazemore</u> "a claim of discriminatory pay is fundamentally unlike other claims of ongoing discriminatory treatment because it involves a series of discrete, individual wrongs rather than a single and indivisible course of wrongful action" (<u>Pollis v. New School for Soc. Research</u>, 132 F.3d 115, 119 (2d Cir. 1997); accord, <u>Cardenas v. Massey</u>, 269 F.3d 251, 257 (3d Cir. 2001); <u>Wagner v. NutraSweet Co.</u>, 95 F.3d 527, 534 (7th Cir. 1996); <u>Ashley v. Boyle's Famous Corned Beef Co.</u>, 66 F.3d 164, 168 (8th Cir. 1995) (en banc); <u>Brinkley-Obu v. Hughes Training, Inc.</u>, 36 F.3d 336, 347 (4th Cir. 1994); <u>Calloway v. Partners Nat'l Health Plans</u>, 986 F.2d 446, 448-49 (11th Cir. 1993)).  Today we join those circuits and the Supreme Court in recognizing that each race-based discriminatory salary payment constitutes a fresh violation of Title VII.

General Motors argues that <u>Bazemore</u> is inapplicable here, but that argument is unpersuasive.  Simply put, none of the cases cited by General Motors in any way supports the premise that <u>Bazemore</u> is irrelevant to Goodwin's pay discrimination claim.

Thus General Motors points to <u>Carter v. West Publ'g Co.</u>, 225 F.3d 1258 (11th Cir. 2000), but <u>Carter</u> did not involve a claim of pay discrimination. Instead it dealt with the lingering effects--the nonreceipt of dividends--of an employer's time-barred discriminatory act of failing to offer stock options to female employees (<u>id</u>. at 1265). As such, that claim fell under the <u>Evans</u> line of cases instead of <u>Bazemore</u>.

General Motors also urges us to adopt the different approach taken in <u>Dasgupta v. University of Wisconsin</u>, 121 F.3d 1138 (7th Cir. 1997). <u>Dasgupta</u> dealt with a complaint of national origin discrimination in which the plaintiff alleged several manifestations of discrimination: differences in pay and promotion as well as the employer's failure to protect him from harassment by other employees (<u>id</u>. at 1139). Each instance of harassment and failure to promote occurred years before plaintiff filed his claim, but he argued that those actions resulted in a continuing violation via a lower salary (<u>id</u>. at 1139-40).

In finding the plaintiff's claim barred by the filing period requirement, the Seventh Circuit analyzed the claim under the lingering effects framework and held that the plaintiff's lower salary did not itself create an independent cause of action (<u>id</u>. at 1140). Describing the line between <u>Dasgupta</u> and <u>Bazemore</u> as "a fine one, but reasonably distinct," the court said that unlike <u>Bazemore</u> "[t]his is not a case...where the illegal act is repeated during the limitations period" (<u>id</u>.).

In drawing that line the court did not advert to the unambiguous <u>Bazemore</u> holding that we have quoted, nor did it explain how--particularly in light of that holding--Dasgupta's claim of discriminatory salary failed to constitute a recurring violation during the limitations period.

Finally, General Motors cites to the district court opinion in <u>Amro v. Boeing Co.</u>, 65 F. Supp. 2d 1170 (D. Kan. 1999), a decision that we affirmed at 232 F.3d 790 (10th Cir. 2000). While the district court there found <u>Dasgupta</u> persuasive (65 F.Supp.2d at 1184-85), it did so in a context in which the plaintiff attempted to avoid the preclusive effect of the holding in an earlier suit--a ruling that his employer had not engaged in salary discrimination--by arguing in plaintiff's second suit that his aggregate salary was discriminatory (<u>id</u>.). In affirming we made much the same point as the district court: Because it had previously been determined that the earlier salary decisions were not discriminatory, any ramifications that those decisions might have on the plaintiff's current salary were obviously not discriminatory either (232 F.3d at 798-99). That holding provides no support for General Motors' position here.

No other circuit has discerned the fine-line "distinction" perceived by the Seventh Circuit in <u>Dasgupta,</u> and we find any such approach unpersuasive here. Goodwin has shown that General Motors pays her less than her similarly-situated white co-workers. To further distinguish Goodwin's situation from that in

Dasgupta, Goodwin had no way of knowing about that disparity (and hence about the assertedly race-based discrimination) until she received the salary information in 1998, at which time she promptly initiated this action.[6]  Just as in Bazemore, each paycheck that delivers less to Goodwin than to her co-workers constitutes grounds for a new claim under Title VII.  We find that Goodwin's claim falls squarely within the pay discrimination framework articulated by Bazemore, and we therefore hold that her claim is not barred by the 300-day filing requirement in Title VII.

There is, however, a limitation on the relief that Goodwin may obtain should she succeed in proving her charge of discrimination at trial.  Title VII permits the recovery of back pay for a period no longer than two years before the filing of the charge of discrimination.  As the en banc Eighth Circuit explained in Ashley, 66 F.3d 168:

> Relief back to the beginning of the limitations period strikes a
> reasonable balance between permitting redress of an ongoing wrong

---

[6]      On this point the district court's analysis was particularly flawed.  It found that Goodwin should have known of the need to file a complaint at the time she received each raise or promotion, for she knew (of course) what her actual salary was at those times.  Just sentences later, though, the district court commented that notice of an adverse employment decision is required before the statute of limitations begins to run under Title VII.  Here Goodwin indisputably had no notice that any of General Motors' salary decisions were adverse to her in terms of racial disparity until she received the salary printout in March 1998.  It makes no sense to suggest that Goodwin should or even could have filed her complaint before she knew about any adverse decisions.

and imposing liability for conduct long past.

We agree with that analysis. Title VII's two-year limitation, which cuts off any claim for the period preceding September 22, 1996, applies to any damages that Goodwin may prove at trial.

Evidence of Discrimination

We now turn to Goodwin's substantive claim. At this summary judgment stage she may show[7] discrimination either directly (through direct or circumstantial evidence or both) or via the indirect <u>McDonnell Douglas</u> burden-shifting method (<u>Elmore v. Capstan, Inc.</u>, 58 F.3d 525, 529 (10th Cir. 1995)). With Goodwin having proffered no direct evidence of discrimination, we must analyze her claims under the <u>McDonnell Douglas</u> ping-pong formulation. First Goodwin must establish a prima facie case of discrimination (<u>id</u>.). If she does so, General Motors must then articulate a legitimate nondiscriminatory reason for its decision (<u>id</u>. at 530). If General Motors meets that burden (of production, not persuasion), Goodwin must prove that the decision was actually the result of intentional discrimination, either by producing evidence of discriminatory motive

---

[7]     Of course Goodwin need not "show" or "prove" or "establish" anything to defeat General Motors' summary judgment motion. Instead she must merely demonstrate the existence of a genuine issue of material (that is, outcome-determinative) fact. Although this opinion will nonetheless often employ one of the quoted terms because that terminology is often used by the cited cases, we have consistently imposed that lesser burden on Goodwin in testing her position.

or intent or by showing that the articulated reason is pretextual (id.).

Goodwin may demonstrate a prima facie case of racial discrimination in a number of ways, including a showing that (1) she is a member of a racial minority, (2) her job performance was satisfactory, (3) she was adversely affected by General Motors' employment decisions and (4) similarly situated non-minority employees were treated differently from her (see the discussion in EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1195 & nn. 6-7 (10th Cir. 2000)). That is not an onerous burden (Ortiz v. Norton, 254 F.3d 889, 895 (10th Cir. 2001)). And here General Motors has disputed only the fourth element--that similarly situated non-minority employees were treated differently.

In analyzing that issue the district court limited its consideration to the raise that Goodwin received in 1998, reasoning that it was the only salary decision that fell within the period of the statute of limitations. Its limited consideration produced two findings: (1) that Goodwin was similarly situated to the other three representatives[8] and (2) that she was not treated differently because the percentage raise that she was offered was equal to or greater than the

---

[8] General Motors has not challenged this finding on appeal, and it is well-supported by the evidence. All four representatives had the same supervisor, performed identical job duties and were subject to the same company standards and policies. In addition, each was a long-term General Motors employee who had held a variety of company positions, including prior supervisory jobs, before being promoted to the position of representative. And Goodwin was one of just two who had master's degrees.

percentage increases given to her co-workers that year. Both by using a percentage approach rather than the absolute numbers involved[9] and by limiting its analysis to that single raise instead of considering Goodwin's full salary history, the district court erred.

While as noted earlier Goodwin may recover damages only for Title VII's two-year statutory period, that limitation on recovery does not at all preclude her from introducing the "quite probative" evidence of earlier acts of discrimination to support a claim of current discriminatory intent (Bazemore, 385 U.S. at 402 n.13; accord, Pitre v. Western Elec. Co, 843 F.2d 1262, 1267 (10th Cir. 1988)). Goodwin may therefore adduce evidence of disparate salary payments throughout her tenure as a representative.

Goodwin's evidence that her starting salary as a representative was between $300 and $500 less than that of her co-workers and that the disparity actually increased as she remained in that position--while the disparity among the other representatives shrank--is certainly adequate to establish that she was treated differently from her similarly-situated non-minority co-workers. Hence Goodwin

---

[9] By definition the application of an identical percentage increase to already unequal amounts increases the dollar difference between them. Because the key showing of discrimination lies in the salary differential between Goodwin and the other representatives, a differential that was maintained--and indeed expanded--by General Motors' practice of granting equal or similar percentage raises to the four employees, such use of an identical percentage increase does not excuse or avoid the discrimination shown by the disparity-in-dollars end result.

has demonstrated a prima facie case of discrimination.

Under the next McDonnell Douglas step, General Motors must articulate a legitimate nondiscriminatory reason for its salary decisions. General Motors has met that "exceedingly light" burden (Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1363 (10th Cir. 1997)) by asserting that Goodwin's salary is simply the natural outcome of her unique employment path. In particular, General Motors points out that unlike the other representatives Goodwin began her career at Leeds instead of Fairfax and suffered salary and grade level demotions as a result of lay-offs. General Motors has also argued that it simply could not afford to raise Goodwin's salary to pay her as much as the other representatives.

In response, Goodwin must demonstrate that those reasons are pretextual (Randle v. City of Aurora, 69 F.3d 441, 452 (10th Cir. 1995)). One way for her to do that is to provide evidence that General Motors' reasons are not worthy of belief (id.; Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ., 245 F.3d 1172, 1177 (10th Cir. 2001)).

Goodwin has more than demonstrated a material factual issue on that score. General Motors' claim that her lower salary resulted in part from her initial employment at the Leeds plant flatly contradicts the explanation that it gave Goodwin when she was first hired at the Fairfax plant--that Leeds paid its employees more than Fairfax. Similarly, the evidence demonstrates that

Goodwin's overall employment path with General Motors is not significantly different from that of the other representatives: All had lengthy careers with General Motors that included significant supervisory experience. When that is combined with Goodwin's education level, which was equal to or greater than that of her co-workers, it cannot be said as a matter of law that Goodwin's employment history justified the pay disparity, let alone its ever-increasing gap.

Finally, the suggestion that General Motors lacked the resources to pay Goodwin a higher salary may clearly be viewed as pretextual in light of the company's policy of setting salary ranges according to market rates, as well as its offer to increase her salary when she confronted them with the evidence of the pay disparity. Goodwin has presented ample evidence under the McDonnell Douglas burden-shifting method to raise genuine issues of material fact as to General Motors' motives in setting, and keeping, her salary well below that of her similarly-situated non-minority co-workers.

Conclusion

In sum, we conclude that Goodwin has succeeded in demonstrating the existence of genuine issues of material fact on her claim of race-based pay discrimination and that the district court erred in granting General Motors judgment as a matter of law. We REVERSE the district court's dismissal of Goodwin's claim and we REMAND this case for trial.