**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 3 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

STACEY L. ZINKE,

      Plaintiff - Appellant,

v.

THE HONORABLE RODNEY E.
SLATER, United States Secretary
of Transportation; DEPARTMENT OF
TRANSPORTATION, an Agency of the
United States Government; FEDERAL
AVIATION ADMINISTRATION, an
Agency of the United States Government,

      Defendants - Appellees.

No. 01-6125
(D. C. No. 99-CV-1015-T)
(W. D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **EBEL** and **KELLY**, Circuit Judges, and **WINDER**,[**] District Judge.

      Plaintiff-Appellant Stacey L. Zinke ("Zinke") filed an action against her employer,

Defendant-Appellee the United States Secretary of Transportation ("the Secretary"), in

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable David K. Winder, United States District Judge, District of Utah,
sitting by designation.

the United States District Court for the Western District of Oklahoma. Zinke alleged discrimination based on a hostile work environment, discrimination based on gender, and retaliation for taking administrative action. The district court dismissed Zinke's hostile work environment and gender discrimination claims and granted summary judgment for the Secretary on the claim of retaliation. Zinke appeals the judgment of the district court. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

BACKGROUND

Zinke began her association with the Federal Aviation Administration ("FAA") as an electronics engineer in approximately September 1989.[1] From September 1989 until March 10, 1991, Zinke worked for a private contractor, providing services to the FAA's engineering division. On March 10, 1991, the FAA hired Zinke as an instructor in the FAA Academy. In February 1991, FAA engineering branch supervisor Bill Pyron made *quid pro quo* sexually harassing remarks to Zinke. Specifically, Pyron told her "if she was looking to have an affair, she didn't have to look any further than [Pyron]." Pyron told Zinke that she was a "smart girl and was going to go a long way in the agency." He said she was "going to move to a GS-14 faster than [Pyron] had ever seen anybody move." Zinke refused these offers and reported the incident to her various supervisors. In March 1991, she filed an informal complaint of harassment with the FAA's EEO

---

[1]We review the evidence in the light most favorable to Zinke, the non-moving party on summary judgment.

office.[2] Zinke requested that Pyron be removed from any managerial position in which he could carry out further acts of harassment.

Thereafter, Zinke learned that other women had experienced similar sexual harassment from Pyron. Zinke also learned that Pyron, although removed from his supervisory job, had been moved to a position which was still considered management level. Dissatisfied with the resolution of her initial complaint, Zinke reopened her case with the EEO office.

The FAA's engineering division manager confronted Pyron and told him that a full investigation would be made of all complaints. Shortly thereafter, Pyron retired from the FAA, effective April 3, 1991. The EEO office informed Zinke of the resolution and sent her notice to file a formal complaint. Zinke never filed a formal complaint regarding the Pyron incident.

In 1994, FAA department AOS-200 openly bid out six or seven GS-14 level positions. Zinke, who worked in another department but had expertise in the positions available, bid on each position. Shortly following Zinke's bids, the department canceled the availability of the positions to everyone except current employees of department AOS-200. Zinke thought the process was unfair and admitted: "I had advice from several people that I should file a complaint, but I knew that the events in my personal life at that

---

[2] Zinke's sequence of events differs slightly from the Secretary's, but the variance is immaterial for purposes of this appeal. The court has accepted as accurate Zinke's factual recitation.

time were too demanding to make it wise for me to file at that time, and I wanted to give AOS a chance to fix it."

In 1995, department AOS-200 openly bid out several GS-13 level positions. Zinke bid on many and in November 1995, she interviewed for one of the positions. Zinke claims she was told by the interviewing panel that she was "exactly what they were looking for." Nonetheless, she did not get the position.

In 1998, department AOS-200 announced two GS-14 job openings, but limited eligible applicants to employees in the AOS division. Zinke believed that the positions had been drawn in such a way as to exclude her from eligibility in order to retaliate against her for having filed her 1991 EEO complaint. On October 10, 1998, Zinke filed a formal EEO complaint alleging that department AOS-200 of the FAA discriminated against her by "nonselection due to reprisal for reporting sexual harassment" in 1991. The 1998 EEO complaint detailed the facts recited above, focusing exclusively on the 1991 *quid pro quo* harassment by Pyron and the job postings in 1994, 1995 and 1998.

On July 16, 1999, Zinke filed a complaint in the United States District Court for the Western District of Oklahoma against United States Secretary of Transportation. In addition to the factual allegations set forth in her 1998 EEO complaint, Zinke's judicial complaint further alleged that between 1991 and 1998 she was subjected to a variety of on-going "hostile, harassing, and retaliatory conduct." For example, Zinke alleged that she was referred to by FAA management as "the one who caused the demise of Bill

-4-

Pyron," and was called gender-derogatory names such as "femi-nazi" and "woman." She alleged that FAA personnel informed Zinke's students to "look out for [Zinke] because she files sexual harassment claims," and claimed that managerial personnel misrepresented that Zinke had an improper relationship with Pyron. Zinke also alleged that she and her academy coworkers had less office space and older furniture than other divisions.

Based on these allegations, Zinke's lawsuit set forth claims for hostile work environment sexual harassment, gender discrimination and retaliation for filing her 1991 EEO complaint.[3] The Secretary moved to dismiss Zinke's claims of sexual harassment[4] and gender discrimination, and moved for summary judgment on the claim of retaliation. The district court granted the motion to dismiss, concluding that it lacked jurisdiction to consider Zinke's claims for hostile work environment harassment and gender discrimination because Zinke failed to exhaust her administrative remedies. The district court granted the Secretary's motion for summary judgment as well, concluding that

---

[3]Zinke's judicial complaint contained 9 causes of action: (1) Sexual Harassment; (2) Gender Discrimination; (3) Retaliation and Reprisal; (4) Violation of 42 U.S.C. § 1983; (5) Violation of 42 U.S.C. § 1985(3); (6) Violation of Oklahoma Anti-Discrimination Act; (7) Breach of Contract; (8) Intentional Infliction of Emotional Distress; and (9) Defamation and Defamation *Per Se*. Zinke voluntarily dismissed counts 4-9.

[4]Although Zinke alleged in her complaint that she was subjected to both *quid pro quo* sexual harassment and hostile work environment sexual harassment, she conceded in her response to the Secretary's motion to dismiss that the *quid pro quo* claim was untimely and voluntarily dismissed it.

Zinke failed to establish a *prima facie* case of retaliation, and even if she had met this initial burden, she failed to demonstrate that the Secretary's explanation for its decision was pretextual. On appeal, Zinke argues: (1) the district court erred in concluding she failed to exhaust her administrative remedies on the claims of hostile work environment and gender discrimination, and (2) the district court improperly weighed factual evidence in granting summary judgment on her claim of retaliation.

DISCUSSION

I.      Exhaustion of Administrative Remedies

Before filing suit in federal court, a federal employee is required by law to complete a number of administrative steps. See Jones v. Runyon, 91 F.3d 1398, 1399-1400 (10th Cir.), cert. denied, 520 U.S. 1115 (1997). Requiring exhaustion of these remedies provides the employer with notice of the nature of the charges and an opportunity to timely investigate and attempt to resolve the matter without judicial action. See Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997); Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir.), cert. denied, 522 U.S. 935 (1997); Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994). "Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." Jones v. Runyon, 91 F.3d at 1399-1400 & n.1.

In this case, Zinke filed a formal complaint with the EEO office on October 10, 1998. She acknowledges, however, that much of the discriminatory and harassing

conduct she alleges occurred outside the limitations period for the 1998 complaint. To avoid this problem, Zinke claims that the incidents of harassment and gender discrimination occurring between 1991 and 1998 amount to a continuing pattern and therefore should be considered under the "continuing violation doctrine."

Under the continuing violation doctrine, a plaintiff may recover for incidents which occurred outside the statutory time limit if at least one instance of the alleged discriminatory practice occurred within the limitations period and the earlier acts are part of a "continuing pattern of discrimination." Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir. 1993). To show a continuing violation a plaintiff can either show "(1) a series of related acts taken against a single individual, one or more of which falls within the limitations period, or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period." Purrington v. Univ. of Utah, 996 F.2d 1025, 1028 (10th Cir. 1993).

To prove a series of related acts, a plaintiff must show the acts rise to the level of a "dogged pattern" of discrimination as distinguished from "isolated and sporadic outbreaks." Bruno v. Western Elec. Co., 829 F.2d 957, 961 (10th Cir. 1987). To determine whether the alleged incidents of discrimination constitute a continuing violation or are discrete unrelated acts, we employ a three-factor inquiry:

> "(i) subject matter–whether the violations constitute the same type of
> discrimination; (ii) frequency; and (iii) permanence–whether the nature of the
> violations should trigger an employee's awareness of the need to assert her rights
> and whether the consequences of the act would continue even in the absence of a

continuing intent to discriminate."

Mascheroni v. Board of Regents of the Univ. of Cal., 28 F.3d 1554, 1561 (10th Cir. 1994) (quoting Martin, 3 F.3d at 1415).

The district court considered these factors and determined that the issues giving rise to Zinke's hostile work environment and gender discrimination claims had not been included in her 1998 EEO complaint. The district court further concluded that even if Zinke's 1998 EEO complaint had included the allegations of harassing and discriminatory conduct, the instances were isolated and did not amount to a continuing violation. Accordingly, the district court concluded that Zinke's hostile work environment and gender discrimination claims were barred for failure to exhaust administrative remedies, and dismissed these claims for lack of jurisdiction. We review *de novo* the district court's dismissal for lack of subject matter jurisdiction. Painter v. Shalala, 97 F.3d 1351, 1355 (10th Cir. 1996); Jones v. Runyon, 91 F.3d at 1400; Cooper v. American Auto. Ins. Co., 978 F.2d 602, 611 n.7 (10th Cir. 1992).[5]

---

[5]On appeal, Zinke states that the district court "apparently treated the FAA's motion to dismiss as a motion for summary judgment under Fed.R.Civ.P. 56" because it "considered evidentiary materials outside the pleadings, such as Zinke's 1998 EEO complaint." Appellant's Br. at 10. The Secretary brought its motion to dismiss under Rule 12(b)(1), seeking dismissal based on a lack of jurisdiction, and the district court consistently referred to and characterized the motion as such. "Unlike the strict limitations under 12(b)(6) against considering matters outside the complaint, a 12(b)(1) motion is considered a 'speaking motion' and can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion." Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir.), cert. denied, 484 U.S. 986 (1987). See, e.g., Jones v. Runyon, 91 F.3d at 1400 (providing that in order to determine whether charges

We agree with the district court's conclusion that application of the continuing violation doctrine is inappropriate given these facts. First, the violations alleged in Zinke's judicial complaint to support her hostile work environment and gender discrimination claims are not the same as those alleged in the 1998 EEO charge nor are they reasonably related to the allegations in the 1998 charge. See Ingels, 42 F.3d at 625 ("[W]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge . . . ."); Runyon, 91 F.3d at 1400.

In 1998, Zinke clearly indicated "reprisal" as the exclusive basis for her EEO complaint. In Block 6, "Check Below Why You Believe You Were Discriminated Against," Zinke marked only "Reprisal," followed by the statement "Non-selection due to reprisal for reporting sexual harassment." Although her failure to mark the box for sex discrimination is not dispositive, it "creates a presumption that she was not asserting claims represented by boxes not checked." Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 (10th Cir. 1998); see also Williams v. Little Rock Mun. Water Works, 21

---

should be dismissed for lack of subject matter jurisdiction "we examine both [Plaintiff's] original charge to the EEOC and her federal court complaint to determine whether the issues raised to the district court were both new and unrelated to her EEOC charges, thus defeating the court's jurisdiction over her action"). Accordingly, we decline to conclude that the Secretary's motion to dismiss for lack of jurisdiction had been converted to a motion for summary judgment.

F.3d 218, 223 (8th Cir. 1994) (providing employee's EEOC charge, which mentioned filing previous racial discrimination charge, reasonably read as alleging only retaliation claim, particularly in light of employee's failure to check box for racial discrimination). Zinke fails to rebut the presumption that she was not asserting additional claims because her factual description of the reprisal claim completely omits any reference to hostile work environment or gender discrimination issues. In Block 7, "Explain How You Believe You Were Discriminated Against," Zinke described in detail what she believed was the FAA's failure to hire her in retaliation for filing the 1991 complaint of *quid pro quo* sexual harassment. See Gunnell, 152 F.3d at 1260 (concluding that plaintiff failed to rebut the presumption that she was not asserting sex discrimination claim, caused by her failure to mark appropriate box, because "reasonable reader would understand that her mention of sex discrimination" was merely an "explanation leading up to the gist of her complaint of retaliation"). There is nothing in the 1998 EEO complaint to put the Secretary on notice of any hostile work environment or gender discrimination claims. In fact, the only reference to any kind of harassment in the 1998 complaint was to the 1991 charge of *quid pro quo* harassment as the "protected activity" element of Zinke's reprisal claim. Thus, we conclude Zinke's hostile work environment and gender discrimination claims are not the same type of discrimination nor do they reasonably relate to her 1998 EEO charge and the district court correctly determined it lacked subject matter jurisdiction over these claims. See Jones v. Denver Post Corp., 203 F.3d 748, 755 (10th

Cir. 2000); Aramburu v. The Boeing Co., 112 F.3d 1398, 1409-10 (10th Cir. 1997); Archuleta v. Colorado Dept. of Institutions, 936 F.2d 483, 488 (10th Cir. 1991).

Moreover, to the extent Zinke's argument on appeal can be construed as claiming that the 1994 and 1995 incidents described in her 1998 EEO complaint show a continuing violation of reprisal, this argument also fails.[6] The continuing violation doctrine "'is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.'" Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1311 (10th Cir. 1999) (quoting Martin, 3 F.3d at 1415 n.6). Thus, a continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred. See id. By her own admission, Zinke was aware of the alleged reprisal as early as 1994. She had a duty to assert her rights at that time and cannot rely on a continuing violation theory to avoid the statutory bar. Bullington, 186 F.3d at 1311.

II.     Sufficiency of the Evidence on Retaliation Claim

To establish a *prima facie* case of retaliation, a plaintiff must prove: "(1) she

---

[6]The district court noted that "at best, the 1998 complaint asserted a continuing course of reprisal, not a continuing course of gender discrimination or sexual harassment." The district court concluded, however, that Zinke's 1998 EEO complaint also failed to allege a continuing violation of reprisal because Zinke admitted in the 1998 EEO complaint that she was advised after the 1994 occurrence that she should file a complaint.

engaged in a protected activity; (2) the defendant took adverse action against her; and (3) a causal connection existed between the protected activity and the adverse employment activity. See Meredith v. Beech Aircraft Corp., 18 F.3d 890, 896 (10th Cir. 1994); Purrington v. University of Utah, 996 F.2d 1025, 1033 (10th Cir. 1993). If plaintiff establishes a *prima facie* case, the burden of production shifts, and the defendant must articulate a legitimate, nondiscriminatory reason for the adverse action. "Once defendant has dispelled the inference of retaliation by establishing a legitimate reason, 'the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination.'" Purrington, 996 F.2d at 1033 (quoting Anderson v. Phillips Petroleum Co., 861 F.2d 631, 634 (10th Cir. 1988)); see also Goodwin v. General Motors Corp., 275 F.3d 1005, 1012 (10th Cir. 2002) (providing at summary judgment stage, once defendant has offered a facially non-discriminatory reason for its employment decision, plaintiff has the burden to show there is a genuine dispute of material fact, as to whether the employer acted with discriminatory motive or intent or its proffered reason for the challenged activity is pretextual - i.e., unworthy of belief).

The district court granted summary judgment in favor of the Secretary because it concluded that Zinke failed to establish a *prima facie* case of retaliation. Specifically, the court determined that Zinke failed to show a causal connection between filing the 1991 EEO complaint and the FAA's decision to limit the applicants for two GS-14 positions to employees in the AOS division–a division that did not include Zinke. The district court

further concluded that even assuming Zinke could successfully establish a *prima facie* case, she failed to provide evidence that the Secretary's legitimate, nondiscriminatory explanation for its employment decision–budgetary restraints[7]–was pretextual. Zinke argues that the district court ignored and improperly weighed factual evidence and therefore erred in granting summary judgment in favor of the Secretary. We review the grant or denial of a motion for summary judgment *de novo*, applying the same legal standard used by the district court pursuant to Fed.R.Civ.P. 56(c). Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995). Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the summary judgment standard, we must examine the factual record and reasonable inferences therefrom in the light most favorable to the non-movant. Wolf, 50 F.3d at 796.

Reviewing the issue *de novo*, we agree with the district court that even assuming Zinke met her burden of showing a *prima facie* case of retaliation, she has failed to

---

[7]The Secretary's proffered reason for Zinke's failure to be considered for either of the GS-14 positions in 1998 was that the FAA was operating under a hiring freeze, due to budgetary constraints, which precluded AOS from creating any new manpower positions. Because there were a sufficient number of qualified candidates for the two positions within AOS, the FAA decided to fill the jobs by promoting current AOS employees. Zinke was not in the AOS division and was therefore ineligible to apply.

present evidence sufficient for a jury to conclude that the Secretary's legitimate, non-discriminatory reason for limiting eligible applicants to employees outside Zinke's division was pretextual.[8]  Zinke offered no proof that a budgetary constraint did not exist, nor did she show that employees outside of AOS were considered for the positions in question.  Rather, Zinke based her pretext argument on the following:  (1) that Mike Michaud, the FAA manager responsible for writing job postings, "knew who he and the FAA had in mind when writing a job description;" (2) that management advised a co-worker to distance himself from Zinke if he wished to be promoted; and (3) that management told her after the 1995 jobs were canceled that the reason she did not get hired was retaliation for filing her 1991 EEO complaint.  Even assuming these allegations are true, they nonetheless fail to demonstrate a genuine issue of fact as to whether the Secretary's employment decision in 1998 was pretextual.

First, review of Mark Michaud's actual testimony reveals only that when Michaud is drafting position descriptions, he "pretty much knows who's out there that fits the technical requirements" for those positions.  Appellant's App. at 247.  There is nothing in this testimony which is inconsistent with the Secretary's proffered reason for its action, and we fail to see in this any evidence of pretext.  Similarly, Zinke's claim that someone in management suggested to a friend of one of her co-workers that he should distance

_____

[8]On appeal, both parties focused their arguments primarily on the issue of pretext rather than causation.

himself from Zinke if he wanted to be promoted is also ineffectual. We have previously characterized such statements as "stray remarks," insufficient to create a genuine issue of fact for a jury. See Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1140 (10th Cir.) (concluding that isolated, ambiguous and/or abstract remarks may be too abstract to support an inference of age discrimination), cert. denied, 531 U.S. 876 (2000); see also Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions."). This applies with particular force here, given that the admissibility of the remark is doubtful, as it constitutes at least double hearsay,[9] and the remark itself is of questionable relevance on the issue of the Secretary's proffered rationale for its business decision. Finally, we agree with the district court's conclusion that Zinke's testimony that a supervisor, who she believes was Robert Pace, told her that she did not receive a promotion in 1995 because of her protected activity, does not create a fact question as to whether, three years later, the Secretary retaliated against her when it limited the applicants for two GS-14 positions to a group of employees that did not include the plaintiff.

Accordingly, we conclude that Zinke has failed to adduce sufficient evidence for a

---

[9]Zinke described the incident as follows: "A co-worker of mine, Larry Gage, also put in for an in-grade to AOS, and never hearing back, he queried a friend of his who works in AOS. His friend, Stan Bradley, said John Dietrich, manager of AOS-230, gave this unofficial advice to my co-worker, that `... if he ever wanted to get picked up by AOS, he would have to disassociate himself from me.'" Appellant's App. at 52.

reasonable trier of fact to infer that the Secretary's decision to limit the pool of applicants to current employees of division AOS was pretextual. The district court's decision to grant summary judgment in the Secretary's favor on Zinke's retaliation claim was thus proper.

The district court's dismissal for lack of jurisdiction of Zinke's claims of hostile work environment and gender discrimination and its grant of summary judgment in favor of the Secretary on the retaliation claim is AFFIRMED.

ENTERED FOR THE COURT


David K. Winder
District Court Judge